02D03-2112-CT-000644
Allen Superior Court 3

Filed: 12/14/2021 4:52 PM
Clerk
Allen County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA ) | | IN THE ALLEN SUPERIOR COURT |
| ) SS: | | |
| COUNTY OF ALLEN ) | | CAUSE NO. |

LEISA SKEVINGTON,       )
                        )
        Plaintiff,      )
                        )
    v.                  )
                        )
BADEN, GAGE, & SCHROEDER LLC, )
                        )
        Defendant.      )

## COMPLAINT

The Plaintiff, by counsel, alleges against the Defendant as follows:

1. The Plaintiff is Leisa Skevington, a qualified individual with a disability who performed within the reasonable expectations of her employer at all times material to this Charge. Plaintiff contends she was discriminated against and retaliated against, and subjected to a hostile work environment ("HWE") by Defendant on the basis of her disability/perceived disability/record of impairment in violation of her federally protected rights pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq* ("ADA"), and that Defendant failed to accommodate Plaintiff's reasonable requests for accommodations pursuant to the ADA. Further, Plaintiff contends that Defendant committed the tort of Intentional Infliction of Emotional Distress ("IIED"), in that it intentionally engaged in extreme and outrageous conduct that caused Plaintiff severe emotional distress, in violation of the laws and public policies of the State of Indiana. Finally, Plaintiff contends that Defendant interfered with her right to utilize the Family Medical Leave Act ("FMLA") to tend to her serious

1

medical condition.

2. Defendant is Baden, Gage, & Schroeder LLC, a company doing business at 6920 Point Inverness Way, STE 300, Fort Wayne, IN 46804. Defendant is an employer for the purposes of the ADA.

3. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 6, 2020, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. A." The EEOC issued dismissal and Notice of Rights on November 4, 2021, a copy of which is attached hereto and made a part hereof as "Ex. B." All administrative remedies have been exhausted, and all jurisdictional requirements have been met for the filing of this lawsuit.

4. Plaintiff worked for the Defendant from June 2018 until her wrongful termination on June 25, 2020. At the time of separation from employment Plaintiff's title was Receptionist.

5. By way of background, in 2009, Plaintiff experienced every parent's worst nightmare. Plaintiff's daughter, who had overcome serious life-threatening respiratory health conditions, traumatically died in Plaintiff's arms in a hospital room following a routine tonsillectomy. This experience led to Plaintiff suffering severe emotional/mental disorders that required the ongoing supervision of medical providers, from the time of her daughter's death through the current date. Defendant was aware of the Plaintiff's medical conditions, her ongoing medical treatment for her conditions, and the circumstances that led to Plaintiff suffering the conditions.

6. In March 2020, when the Coronavirus pandemic led to the Governor of Indiana issuing an executive order that included the order for social distancing (six feet between people), Plaintiff requested that protective measures be put into place at her desk, as she was the front desk receptionist and came into direct contact with every person who entered the office.

7. Defendant refused to comply with the Governor's orders and denied Plaintiff any sort of protection or ability to maintain social distance from customers and/or other employees.

8. The threat of contracting COVID-19, and the respiratory symptoms that were being reported as a result of those affected by the virus, negatively affected Plaintiff's mental and emotional health, as she watched her daughter suffer for years with respiratory ailments, and had cared for her daughter who at one time had had a tracheotomy, and understood the severity of the potential complications she could suffer if she contracted COVID-19. Plaintiff verbally communicated her concerns to Defendant and indicated that the lack of ability to protect herself was having a negative impact on her mental/emotional health.

9. Plaintiff requested the reasonable accommodation of a plexi-glass shield to facilitate social distancing with customers and to alleviate the emotional distress she was experiencing, and/or signage reflecting CDC guidelines; her request was denied. Defendant indicated they believed it "would offend clients." Instead, Defendant placed a potted plant in front of Plaintiff's desk. Clients simply walked around it.

10. Plaintiff then requested the reasonable accommodation of a box being placed in front of her desk for clients to put paperwork in, rather than handing them to her when they came into the office. This request was initially approved, but then a short time later the box was removed and Plaintiff was verbally reprimanded because a client had allegedly complained about the box and "was offended" at having to use it. By information and belief, this allegation of an offended client was untrue.

11. Plaintiff continued to request safety measures be implemented in line with the Governor's executive orders to provide her with protection for both her physical and mental well-being, but all requested safety measures were denied. She was continually criticized for attempting to keep six feet between herself and clients and/or co-workers. She was told that her "body language" was offensive.

12. On March 20, 2020, Defendant had sponsored a company luncheon that was set up buffet-style in the office. When Plaintiff declined to join in the luncheon because social distancing was not being observed, and the food was unprotected from exposure to the employees, Plaintiff's supervisor Chris Hootman sneered at her "Yeah, I may breathe on it…" and walked away.

13. At the same time, Plaintiff became aware that other employees were making snide comments about her acting "too good to socialize" with them, and that she was overreacting to the threats the Coronavirus presented. Plaintiff sent an email to Ms. Hootman complaining of the treatment she was receiving by not only Ms. Hootman, but also other employees, and indicated she felt like "the office joke." Hootman replied indicating that she was getting ready to send out an email to all staff to stress

4

the importance of following the COVID guidelines. Hootman did send a company-wide email, but nothing changed.

14. Following her complaints, Plaintiff found herself the target of multiple instances of unjust criticism from co-workers and management alike. For example, Plaintiff was criticized for sending out a routine email reminding employee to check their mailboxes if they were getting full. However, the week prior, employee "Shelly" sent the same email out but was not criticized. She was also criticized for the way she sprayed Lysol. In fact, Plaintiff's supervisor instructed another employee to give Plaintiff a "tutorial" on the correct way to spray the disinfectant, which was humiliating and degrading to Plaintiff.

15. Besides the petty criticisms, Plaintiff also found herself being set up for criticism by management. For example, Plaintiff was instructed to refer all clients with questions about the company's office policies regarding COVID guidelines to the company website; but then was reprimanded for doing so because "clients don't always have internet access." The constant scrutiny and disparaging remarks from co-workers, coupled with the Defendant's failure to adhere to the Governor's executive orders, caused Plaintiff emotional distress to the point that she began to feel physically ill.

16. By April 10, 2020, Plaintiff's mental health condition had exacerbated to the point that she left work and sought medical care. Plaintiff's doctor took Plaintiff off work until April 13, 2020.

17. On April 30, 2020, after further issues with the Defendant's failure to provide protection to Plaintiff pursuant to the executive orders, further unjust and deliberate

5

scrutiny by management, and deliberate ridicule by co-workers and management alike, Plaintiff's mental state had declined to the point that her therapist recommended that Plaintiff take time off work pursuant to the FMLA (which was identified in Defendant's Employee handbook as being available to employees). The following day, when Plaintiff was called into a meeting with management, she discussed either utilizing the FMLA or short-term disability ("STD") to take time off work to tend to her serious medical condition. Plaintiff was told that those options were not available to her—and that management had already decided the day prior to terminate her employment. Instead, in light of Plaintiff's FMLA/STD request, Defendant placed Plaintiff on a thirty (30) day furlough.

18. On June 1, 2020, Plaintiff returned to work. On her first day back, she was called into a meeting where management apologized for their past behaviors. Later the same day, Plaintiff was chastised by the same management for not refilling the forks in the breakroom—but upon inspection, the forks did not need refilled.

19. On June 10, 2020, Plaintiff opened a letter that was not addressed to anyone in particular at the office (part of her normal daily duties), and while trying to decide to whom the letter should be routed, noted that the letter was a bill from an attorney, addressing phone calls with Defendant's partners regarding issues that could only pertain to Plaintiff.

20. Despite the apology from management, the constant criticism and scrutiny continued. For example, on June 12, 2020, Plaintiff received an email from her supervisor that

6

complained about the thermostat setting, in spite of the fact that Plaintiff had set the thermostat within the parameters management previously identified as appropriate.

21. On June 25, 2020, Plaintiff was terminated. The alleged reason for her termination was that she "didn't fit in," and that she had offended a client by way of the safety measures she had previously requested in March 2020.

22. Plaintiff alleges that the proffered reasons for her termination were false and pretextual, and in reality, she was discriminated against and retaliated against on the basis of her disability/perceived disability/record of impairment and/or for her requests for reasonable accommodations in violation of her rights under the ADA.

23. Plaintiff also alleges that her right to utilize time off work pursuant to the FMLA to tend to her serious medical condition was interfered with when Defendant refused to allow Plaintiff to submit a request for FMLA and instead "furloughed" her for thirty (30) days. By information and belief FMLA coverage was available to all of Defendant's employees at the time that Plaintiff indicated she would like to submit a request.

24. Defendant's discriminatory and retaliatory conduct was the direct and proximate cause of Plaintiff suffering the loss of her job and job-related benefits, including income, and subjected Plaintiff to severe emotional distress, mental anguish, embarrassment, and other damages and injuries. Plaintiff seeks compensatory damages as well as reasonable attorney fees and costs.

25. Furthermore, Defendant's discriminatory and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, warranting an imposition of punitive damages.

26. Finally, Plaintiff contends that the behaviors Defendant engaged in were extreme and outrageous, and amount to Intentional Infliction of Emotional Distress in violation of the laws and public policies of the State of Indiana.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, liquidated damages, reasonable attorney's fees and costs, and for all other just and proper relief in the premises.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**LAW OFFICE OF JENNIFER L. HITCHCOCK**

/s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 625
Fort Wayne, IN 46802
Telephone: (260) 240-4644
E-Mail: jennifer@jhitchcocklaw.com
Attorney for Plaintiff

EEOC Form 161 (11/2020)      U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Klint Cooper
5115 Stonehedge Blvd. Apt. 3
Fort Wayne, IN 46835

From: Indianapolis District Office
101 West Ohio Street
Suite 1900
Indianapolis, IN 46204

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 24D-2021-00116 | Jeremy A. Sells, State & Local Coordinator | (463) 999-1161 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. *(The time limit for filing suit based on a claim under state law may be different.)*

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Michelle Eisele*

November 4, 2021

Enclosures(s)

Michelle Eisele,
District Director

*(Date Issued)*

cc:
David Owen
KROGER
1014 Vine Street
Cincinnati, OH 45231

Jennifer Hitchcock, Esq.
LAW OFFICE OF JENNIFER HITCHCOCK
116 E. Berry Street, Suite 625
Fort Wayne, IN 46802

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 470-2020-03475 |

Equal Employment Opportunity Commission _____ and EEOC
State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Leisa Skevington | (260)740-4494 | 05/21/1978 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2204 Plateau Point | Fort Wayne, IN 46808 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Baden, Gage, & Schroeder LLC | 20+ | (260) 422-2551 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6920 Point Inverness Way STE 300 | Fort Wayne, IN 46804 |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify) IIED, HWE

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 03/20/2020  Latest: 06/25/2020
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I.  The Complainant is Leisa Skevington, a qualified individual with a disability who performed within the reasonable expectations of her employer at all times material to this Charge. Complainant contends she was discriminated against and retaliated against, and subjected to a hostile work environment ("HWE") by Respondent on the basis of her disability/perceived disability/record of impairment in violation of her federally protected rights pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq* ("ADA"), and that Respondent failed to accommodate Complainant's reasonable requests for accommodations pursuant to the ADA. Further, Complainant contends that Respondent committed the tort of Intentional Infliction of Emotional Distress ("IIED"), in that it intentionally engaged in extreme and outrageous conduct that caused Complainant severe emotional distress, in violation of the laws and public policies of the State of Indiana.

II.  Respondent is Baden, Gage, & Schroeder LLC, a company doing business at 6920 Point Inverness Way, STE 300, Fort Wayne, IN 46804. Respondent is an employer for the purposes of the ADA.

III.  Complainant worked for the Respondent from June 2018 until her wrongful termination on June 25, 2020. At the time of separation from employment Complainant's title was Receptionist.

IV.  By way of background, in 2009, Complainant experienced every parent's worst nightmare. Complainant's daughter, who had overcome serious life-threatening respiratory health conditions, traumatically died in Complainant's arms in a hospital room following a routine tonsillectomy. This experience led to Complainant suffering severe emotional/mental disorders that required the ongoing supervision of medical providers, from the time of her daughter's death through the current date. Respondent was aware of the Complainant's medical conditions, her ongoing medical treatment for her conditions, and the circumstances that led to Complainant suffering the conditions.

V.  In March 2020, when the Coronavirus pandemic led to the Governor of Indiana issuing an executive order that included the order for social distancing (six feet between people), Complainant requested that protective measures be put into place at her desk, as she was the

02:28:22 p.m. 08-06-2020 | 5 | 2604443441
2020-08-06 14:59                0 2604443441 >> 3172267953
Equal Employment Opportunity Commission
Indianapolis District Office  P 5/7
RECEIVED 08/06/2020
470-2020-03475

front desk receptionist and came into direct contact with every person who entered the office.

VI. Respondent refused to comply with the Governor's orders, and denied Complainant any sort of protection or ability to maintain social distance from customers and/or other employees.

VII. The threat of contracting COVID-19, and the respiratory symptoms that were being reported as a result of those affected by the virus, negatively affected Complainant's mental and emotional health, as she watched her daughter suffer for years with respiratory ailments, and had cared for her daughter who at one time had had a tracheotomy, and understood the severity of the potential complications she could suffer if she contracted COVID-19. Complainant verbally communicated her concerns to Respondent and indicated that the lack of ability to protect herself was having a negative impact on her mental/emotional health.

VIII. Complainant requested the reasonable accommodation of a plexi-glass shield to facilitate social distancing with customers and to alleviate the emotional distress she was experiencing, and/or signage reflecting CDC guidelines; her request was denied. Respondent indicated they believed it "would offend clients." Instead, Respondent placed a potted plant in front of Complainant's desk. Clients simply walked around it.

IX. Complainant then requested the reasonable accommodation of a box being placed in front of her desk for clients to put paperwork in, rather than handing them to her when they came into the office. This request was initially approved, but then a short time later the box was removed and Complainant was verbally reprimanded because a client had allegedly complained about the box and "was offended" at having to use it. By information and belief, this allegation of an offended client was untrue.

X. Complainant continued to request safety measures be implemented in line with the Governor's executive orders to provide her with protection for both her physical and mental well-being, but all requested safety measures were denied. She was continually criticized for attempting to keep six feet between herself and clients and/or co-workers. She was told that her "body language" was offensive.

XI. On March 20, 2020, Respondent had sponsored a company luncheon that was set up buffet-style in the office. When Complainant declined to join in the luncheon because social distancing was not being observed, and the food was unprotected from exposure to the employees, Complainant's supervisor Chris Hootman sneered at her "Yeah, I may breathe on it..." and walked away.

XII. At the same time, Complainant became aware that other employees were making snide comments about her acting "too good to socialize" with them, and that she was overreacting to the threats the Coronavirus presented. Complainant sent an email to Ms. Hootman complaining of the treatment she was receiving by not only Ms. Hootman, but also other employees, and indicated she felt like "the office joke." Hootman replied indicating that she was getting ready to send out an email to all staff to stress the importance of following the COVID guidelines. Hootman did send a company-wide email, but nothing changed.

XIII. Following her complaints, Complainant found herself the target of multiple instances of unjust criticism from co-workers and management alike. For example, Complainant was criticized for sending out a routine email reminding employee to check their mailboxes if they were getting full. However, the week prior, employee "Shelly" sent the same email out but was not criticized. She was also criticized for the way she sprayed Lysol. In fact, Complainant's supervisor instructed another employee to give Complainant a "tutorial" on the correct way to spray the disinfectant, which was humiliating and degrading to Complainant.

XIV. Besides the petty criticisms, Complainant also found herself being set up for criticism by management. For example, Complainant was instructed to refer all clients with questions about the company's office policies regarding COVID guidelines to the company website; but then was reprimanded for doing so because "clients don't always have internet access." The constant scrutiny and disparaging remarks from co-workers, coupled with the Respondent's

02:28:22 p.m. 08-06-2020 | 6 | 2604443441
2020-08-06 14:59       0 2604443441 >> 3172267953
Equal Employment Opportunity Commission
Indianapolis District Office P 6/7
RECEIVED 08/06/2020
470-2020-03475

failure to adhere to the Governor's executive orders, caused Complainant emotional distress to the point that she began to feel physically ill.

XV. By April 10, 2020, Complainant's health condition had exacerbated to the point that she left work and sought medical care. Complainant's doctor took Complainant off work until April 13, 2020.

XVI. On April 30, 2020, after further issues with the Respondent's failure to provide protection to Complainant pursuant to the executive orders, further unjust and deliberate scrutiny by management, and deliberate ridicule by co-workers and management alike, Complainant's mental state had declined to the point that her therapist recommended that Complainant take time off work pursuant to the FMLA (which was identified in Respondent's Employee handbook as being available to employees). The following day, when Complainant was called into a meeting with management, she discussed either utilizing the FMLA or short-term disability to take time off work to tend to her serious medical condition. Complainant was told that those options were not available to her—and that management had already decided the day prior to terminate her employment. Instead, in light of Complainant's request, Respondent placed Complainant on a thirty (30) day furlough.

XVII. On June 1, 2020, Complainant returned to work. On her first day back, she was called into a meeting where management apologized for their past behaviors. Later the same day, Complainant was chastised for not refilling the forks in the breakroom—but upon inspection, the forks did not need refilled.

XVIII. On June 10, 2020, Complainant opened a letter that was not addressed to anyone in particular at the office (part of her normal daily duties), and while trying to decide to whom the letter should be routed, noted that the letter was a bill from an attorney, addressing phone calls with Respondent's partners regarding issues that could only pertain to Complainant.

XIX. Despite the apology from management, the constant criticism and scrutiny continued. For example, on June 12, 2020, Complainant received an email from her supervisor that complained about the thermostat setting, in spite of the fact that Complainant had set the thermostat within the parameters management previously identified as appropriate.

XX. On June 25, 2020, Complainant was terminated. The alleged reason for her termination was that she "didn't fit in," and that she had offended a client by way of the safety measures she had previously requested in March 2020.

XXI. Complainant alleges that the proffered reasons for her termination were false and pretextual, and in reality, she was discriminated against and retaliated against on the basis of her disability/perceived disability/record of impairment and/or for her requests for reasonable accommodations in violation of her rights under the ADA.

XXII. Respondent's discriminatory and retaliatory conduct was the direct and proximate cause of Complainant suffering the loss of her job and job-related benefits, including income, and subjected Complainant to severe emotional distress, mental anguish, embarrassment, and other damages and injuries. Complainant seeks compensatory damages.

XXIII. Furthermore, Respondent's discriminatory and retaliatory conduct was intentional, knowing, willful, wanton, and in reckless disregard of Complainant's federally protected rights, warranting an imposition of punitive damages.

XXIV. Finally, while Complainant recognizes that the state law tort of IIED is not subject to any exhaustion of administrative remedies, she wishes to put Respondent on notice that she alleges that the behaviors Respondent engaged in were extreme and outrageous, and she therefore intends to bring a claim for IIED through the courts.

```
02:28:22 p.m. 08-06-2020   | 7 |   2604443441
2020-08-06  14:59                              0  2604443441  >>  3172267953
```
Equal Employment Opportunity Commission
Indianapolis District Office  P 7/7

RECEIVED 08/06/2020

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. 470-2020-03475 |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| Aug 6, 2020           _____ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date                  Charging Party Signature | |



Notary seal: ALLISON C. OLINGER, My Commission Expires 03-31-2028, NOTARY PUBLIC SEAL, STATE OF INDIANA